UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CERTAIN UNDERWRITERS at LLOYD'S, LONDON, Subscribing to Policies Numbered 8029663, 8001778, 8071754, 8072492, 8072737, and 8071620,<br><br>Plaintiffs,<br><br>v.<br><br>JEFF PETTIT, an individual,<br><br>Defendant. | Case No. C17-259RSM<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTIONS IN LIMINE |

This matter comes before the Court on Defendant Jeff Pettit's Motions in Limine. Dkt. #44. Mr. Pettit argues the Court should exclude portions of the testimony of Plaintiffs' experts Paul Way and Arthur Faherty under Federal Rule of Evidence 702. *Id*. Plaintiffs Certain Underwriters at Lloyd's, London, Subscribing to Policies Numbered 8029663, 8001778, 8071754, 8072492, 8072737, and 8071620 ("Plaintiffs") oppose. Dkt. #48. For the reasons set forth below, the Court GRANTS IN PART Defendant's Motions.

## I. BACKGROUND

The background facts of this case have been discussed before, and will be set forth in a limited form for purposes of ruling on these Motions.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS IN LIMINE - 1

On February 21, 2014, a fire broke out at J Dock at the Shelter Bay Marina in La Conner, Washington. Dkt. #1 ("Complaint") at ¶¶ 3.1, 3.3. One of the several recreational vessels destroyed by the fire was the IN DECENT SEAS, owned by Mr. Pettit. Complaint at ¶ 3.1; Dkt. #6 ("Answer") at ¶ 7.5. Another of the damaged vessels was the SHEAR JOY, owned by Bill and Myo Shears ("the Shears"). Complaint at ¶ 3.1. The two vessels were moored next to each other. The circumstances of the marina fire were previously presented to the Court in the context of a claim for exoneration brought by the Shears, which was decided in the Shears' favor on summary judgment. *See In re Complaint of Shears*, No. C14-1296RSM, 2016 U.S. Dist. LEXIS 258, at *15 (W.D. Wash. Jan. 4, 2016).

Plaintiffs claim that IN DECENT SEAS was the cause of the fire and are pursuing subrogated claims in this case against Defendant Pettit for damages incurred by other owners of vessels moored at Shelter Bay Marina. Plaintiffs retained expert Paul Way to testify as to the cause and origin of the fire, and expert Arthur Faherty to testify on the standards of care applicable to pleasure boat owners.

This case was filed on February 17, 2017, and is set for a bench trial before the Court on October 29, 2018. *See* Dkts. #1 and #38.

## II. DISCUSSION

**A. Legal Standard**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

ORDER GRANTING IN PART DEFENDANT'S MOTIONS IN LIMINE - 2

(d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial court acts as a gatekeeper and ensures that the proffered scientific testimony meets certain standards of both relevance and reliability before it is admitted. *Daubert v. Merrell Dow Pharm., Inc. ("Daubert I")*, 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The party proffering expert testimony has the burden of showing the admissibility of the testimony by a preponderance of the evidence. *Daubert I*, 509 U.S. at 592 n.10. "[J]udges are entitled to broad discretion when discharging their gatekeeping function" related to the admission of expert testimony. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-53, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). The Court considers four factors to determine if expert testimony will assist the trier of fact: "(i) whether the expert is qualified; (ii) whether the subject matter of the testimony is proper for the jury's consideration; (iii) whether the testimony conforms to a generally accepted explanatory theory; and (iv) whether the probative value of the testimony outweighs its prejudicial effect." *Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998).

As an initial matter, this Court must determine whether the proffered witness is qualified as an expert by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Because the Rule "contemplates a *broad conception* of expert qualifications," only a "*minimal foundation* of knowledge, skill, and experience" is required. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). A "lack of particularized expertise goes to the weight of [the] testimony, not its admissibility." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir.

1984)); *Daubert v. Merrell Dow Pharm., Inc. ("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir. 1995).

The trial court must also ensure that the proffered expert testimony is reliable. Generally, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. Toward this end, the Supreme Court in *Daubert I* set forth the following factors for the trial court to consider when assessing the reliability of proffered expert testimony: (1) whether the expert's method, theory, or technique is generally accepted within the relevant scientific community; (2) whether the method, theory, or technique can be (and has been) tested; (3) whether the method, theory, or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the method, theory, or technique. *Daubert I,* 509 U.S. at 593-94. An expert opinion is reliable if it is based on proper methods and procedures rather than "subjective belief or unsupported speculation." *Id.* at 590. The test for reliability "'is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Daubert II*, 43 F.3d at 1318).

Alternative or opposing opinions or tests do not "preclude the admission of the expert's testimony – they go to the *weight*, not the admissibility." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Furthermore, "'[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Id.* (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

ORDER GRANTING IN PART DEFENDANT'S MOTIONS IN LIMINE - 4

Finally, the Court must ensure that the proffered expert testimony is relevant. As articulated in Rule 702, expert testimony is relevant if it assists the trier of fact in understanding evidence or in determining a fact in issue. *Daubert I*, 509 U.S. at 591. Thus, the party proffering such evidence must demonstrate a valid scientific connection, or "fit," between the evidence and an issue in the case. *Id.* Expert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people because it would not assist the trier of fact in analyzing the evidence. In the Ninth Circuit, "[t]he general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). Because unreliable and unfairly prejudicial expert witness testimony is not helpful to the trier of fact, the trial court should exclude such evidence. *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). Likewise, expert testimony that merely tells the jury what result to reach is inadmissible. Fed. R. Evid. 704, Advisory Committee Note (1972); *see, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

**B. Defendant's Motion to Exclude the Testimony of Paul Way**

The Court begins by noting that, because this case is set for a bench trial, the Court could easily defer its ruling on these issues until trial. *See United States v. Flores*, 2018 U.S. App. LEXIS 24331, *25 (9th Cir. August 28, 2018); *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial."); *United States v. RSR Corp.*, 2005 U.S. Dist. LEXIS 45989, *4, 2005

WL 5977799 (W.D. Wash. Oct. 4, 2005). However, the Court will provide the following rulings for clarity and to streamline trial.

Defendant takes issue with Mr. Way's opinions that defects in Defendant's power cord adapter or inlet were due to "movement, corrosion, damage and improper maintenance." Dkt. #44 at 5 (citing Dkt. #45 at 155-56). According to Defendant, "Mr. Way stated it was possible the power cord was under tension and subject to movement, but no witness testimony supports it, and Mr. Way did not supply evidence of any testing that shows the method used by Mr. Pettit actually caused tension or movement at the electrical connection between the power cord and the power inlet…" *Id*. at 6. Defendant argues there is no testimony or evidence that any corrosion existed on the shore power cord, adapter or inlet at the time of the fire, and that he testified at deposition that he checked for corrosion when he checked on his vessel. *Id*. at 7. Defendant relies on *Atlantic Specialty Ins. Co. v. Porter, Inc.*, No. cv 15-570, 2016 WL 6833082 (E.D. La. Nov. 21, 2016) as a case involving alleged corrosion leading to a boat fire where the Court found that the plaintiff insurance company had relied on speculation to show that corrosion had caused the fire and ruled in favor of defendant. Defendant next argues that Mr. Way's conclusion about improper maintenance, specifically "unresolved electrical issues," was speculative and not based on any evidence. *Id*. at 8 – 9. Defendant points out:

> Mr. Way obtained an exemplar power cord adapter, and plugged it into an exemplar power inlet. He determined that there was millimeter or two of movement between the spades of the inlet and the prongs of the plug, when the cord was moved by hand…. Mr. Way did not test to see if this minimal movement could cause a high resistance condition to form…. He did not test to see if the movement caused arcing in the connection or that it could have created a fire. He did not test the cord, in the configuration it existed on the IDS at the time of the fire, to see what if any movement was caused by simulated wave action.

*Id*. at 10.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS IN LIMINE - 6

In Response, Plaintiffs argue that their expert is highly qualified and relied on substantial evidence in reaching the above and other conclusions. Dkt. #48. Plaintiffs contend that "no physical testing is required" under National Fire Protection Association ("NFPA") standards and that deductive reasoning alone can suffice as a manner to test a hypothesis. *Id.* at 14. Plaintiffs point out that Defendant's concerns go to weight, not admissibility.

The Court finds that Mr. Way's expert opinions that defects in Defendant's power cord adapter or inlet were due to "movement, corrosion, damage and improper maintenance" are not admissible under FRE 702. As stated previously, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. In considering the reliability factors set forth in *Daubert I*, the Court finds that Mr. Way's theories as to the above causes of ignition are generally accepted within the relevant scientific community, but that the theories have not been adequately tested as to the facts of this case. *See Daubert I,* 509 U.S. at 593-94. An expert opinion is reliable if it is based on proper methods and procedures rather than "subjective belief or unsupported speculation." *Id.* at 590. By failing to test whether the conditions at issue in this case could lead to an ignition or fire, Mr. Way's methods and procedure stop at subjective belief and unsupported speculation. *See Werth v. Hill-Rom, Inc.*, 856 F. Supp.2d 1051, 1061 (D. Minn. 2012). Deductive reasoning alone cannot suffice where there is a lack of evidence that could support the conclusions reached. Mr. Way's deductive reasoning as to these conclusions appears to have been essentially speculation. Accordingly, the Court will grant this Motion in part. Plaintiffs and their counsel shall not elicit testimony from its witnesses Paul Way and Arthur Faherty, and instruct them not to testify as to, the following: that defects

in Defendant's power cord adapter or inlet were due to movement, corrosion, damage and improper maintenance; or that the manner in which Defendant routed his shore power adapter and cord from boat to dock was unsafe or caused an overheating condition to develop. All other issues raised by this Motion go to the weight and not admissibility of Mr. Way's testimony, and therefore Mr. Way is permitted to testify as to those topics.

### C. Defendant's Motion to Exclude the Testimony of Arthur Faherty

The Court finds that Defendant's Motion to exclude the testimony of Arthur Faherty goes to the weight, not the admissibility of his testimony. *See Kennedy*, 161 F.3d at 1231 ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony"). Furthermore, because this is a bench trial, the Court is more than capable of ruling on these issues at or after trial, and finds that Defendant's concerns are best addressed through cross-examination and the presentation of contrary evidence. This Motion is denied.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Jeff Pettit's Motions in Limine (Dkt. #44) are GRANTED IN PART AND DENIED IN PART as stated above.

DATED this 15 day of October 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE